IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| MICHAEL MOTTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:07-0627 |
| | ) | |
| C.J. RIDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Plaintiff's Application to Proceed *In Forma Pauperis*, Motion for Injunctive Relief, and Motion to Withdraw and Dismiss Complaint. (Document Nos. 1, 4, and 8.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. §636(b)(1)(B). (Document No. 7.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Plaintiff's Motion to Withdraw and Dismiss Complaint and deny his Application to Proceed *In Forma Pauperis* and Motion for Injunctive Relief as moot by virtue of his voluntary dismissal of this action.

## FACTUAL AND PROCEDURAL HISTORY

On October 9, 2007, Plaintiff, an inmate at Mount Olive Correctional Complex [MOCC], in Mount Olive, West Virginia, and acting *pro se*, filed a Complaint and an Application to Proceed Without Prepayment of Fees.[1] (Document Nos. 1 and 3.) Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his right to practice his sincerely held religious beliefs as guaranteed

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

by the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and protected by the Religious Land Use and Institutionalized Persons Act of 2000 [RLUIPA]. Specifically, Plaintiff alleges that Defendants: (1) restricted Plaintiff's religious use of tobacco and a prayer pipe to once a week during a weekly prayer meeting; (2) failed to grant him and other male Native Americans a religious exemption from the grooming policy; (3) refused to allow him and other Native Americans to construct a sweat lodge; (4) restricted him and other Native Americans from purchasing unlimited amounts of herbs; (5) refused him the opportunity to wear his feather and "choker style necklace" outside his cell; (6) denied him a "religious diet" of meat and vegetables; and (7) refused to construct an outdoor shelter for him and other Native Americans to have prayer meetings during inclement weather. (Document No. 3, pp. 6 - 8.) Plaintiff further argues that the Department of Corrections [DOC] discriminates against male inmates because female inmates are "allowed to keep their hair any length they want as long as it is kept neat and clean." (Id., p. 7.) Plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief. (Id., pp. 8 - 9.) Plaintiff further requests the Court to issue an injunction compelling Defendants to exempt Plaintiff and other Native Americans from the grooming policy. (Document No. 4.)

On July 15, 2008, Plaintiff filed a Letter-Form Motion requesting the voluntary dismissal of the above action. Specifically, Plaintiff states as follows:

> I am writing today to formally request that the above mentioned civil action be withdrawn and thus removed from the Court's docket. The reasons for this are: (1) Due to recent events here at Mt. Olive Correctional Complex the statement of claim needs to be amended; (2) There are others who are joining me in the pursuit of the right to practice the Native American religion here at Mt. Olive and are joining this civil action; (3) This action deals with several issues, and it has come to my attention, that in order to properly exhaust 'administrative remedies' these issues should have been addressed in the Division of Corrections Grievance Procedure individually on separate grievance forms, one form per issue, all the issues raised

were addressed on one grievance so the 'exhaustion of administrative remedies' was not done properly on my part. In order to address all these issues properly I must withdraw this civil action, thus this request. It is also my understanding that being as this action has not been acted upon as of the above date that a request to withdraw is proper at this time to correct the above problems. I also request that you send confirmation of this withdraw for my records. Thank you for your time in this matter.

(Document No. 8.)

## ANALYSIS

1. **Plaintiff's Motion for Voluntary Dismissal.**

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a plaintiff may voluntarily dismiss an action without a Court Order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Rule 41(a)(1)(B) states in pertinent part, as follows:

> Unless the notice of dismissal or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal – or state – court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.[2]

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The purpose of the Rule respecting voluntary dismissal "is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). It is well established that prejudice to the defendant does not result from the prospect of a

---

[2] The undersigned notes that Plaintiff initiated *Motto v. Childers, et al.*, Civil Action No. 5:03-0625, in this District Court alleging violations of his rights in practicing his Native American religion. The matter was dismissed for Plaintiff's failure to exhaust administrative remedies.

3

second lawsuit. See Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386 (S.D. W.Va. Sep. 12, 2003). In considering a Motion under Rule 41(a)(2), the District Court should consider the following relevant, but non-dispositive, factors: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Id.

Defendants have neither filed an Answer to Plaintiff's Complaint nor otherwise pled. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion requesting voluntary dismissal of this action be viewed under Federal Rule of Civil Procedure 41(a)(1)(A) and that the instant civil action be dismissed under Rule 41(a)(1)(A)(i) without prejudice. See e.g., Camacho v. Mancuso, 53 F.3d 48, 51 (4th Cir. 1995)(Rule 41(a)(1) "only allows a unilateral dismissal prior to a defendant's filing an answer to the complaint or filing a motion for summary judgment.")

## 2.      Plaintiff's Motion for Injunction.

The undersigned notes that the District Court denied a request for injunctive relief upon grounds virtually identical to those alleged herein in Roddy v. Childers, et al., Civil Action No. 5:03-0612 at Document Nos. 25 (Proposed Findings and Recommendation) and 28 (Order). Accordingly, for the same reasons stated in that case, the undersigned finds that Plaintiff's Motion for Injunctive Relief (Document No. 4.) would very likely be denied on the merits if Plaintiff wished to press it.

In considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

(1)     the likelihood of irreparable harm to the plaintiff if the preliminary injunction

4

is denied;
(2)     the likelihood of harm to the defendant if the requested relief is granted;
(3)     the likelihood that the plaintiff will succeed on the merits; and
(4)     the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997)(quoting Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Id.   When injunctive or prospective relief is requested in the context of allegations that prison conditions violate constitutional rights, 18 U.S.C. § 3626 requires that the District Court focus its attention on additional factors in assessing whether such relief is appropriate and, if so, ordering it. Title 18, U.S.C. § 3626(a)(1)(A) states when prospective relief is appropriate with respect to prison conditions as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The Court shall not grant or approve any prospective relief unless the court finds that such is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

The right to injunctive relief with respect to prison conditions must clearly be predicated upon a finding that a federal constitutional right has likely been violated.

The undersigned finds that Plaintiff appears to be seeking an injunction exempting him and other Native American inmates from the DOC's grooming policy because the policy allegedly violates the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

First, the undersigned will view Plaintiff's claim under the First Amendment. Inmates clearly

retain certain constitutional protections notwithstanding their convictions and confinement in prison. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Generally speaking, to prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege, or immunity protected by the Constitution or laws of the United States.

Of the rights retained by inmates upon incarceration is the right to practice their religion while in prison. See O'Lone, v. Estate of Shadbazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment applies to the State governments through the Fourteenth Amendment. See Board of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet, 512 U.S. 687, 690, 114 S.Ct. 2481, 2484, 129 L.Ed.2d 546 (1994). Under the Free Exercise Clause, states are prohibited from enacting laws "designed to suppress religious beliefs or practices." Hines v. South Carolina Dept. of Corrs., 148 F.3d 353, 357 (4th Cir. 1998). The United States Supreme Court has formulated two analyses to determine whether a state law violates the Free Exercise Clause of the First Amendment. First, if the law proscribes or prohibits conduct irrespective of religious and secular views, the law is considered neutral and therefore, does not violate the Free Exercise Clause. See Booth v. Maryland, 3275 F.3d 377, 380 (4th Cir. 2003)(citing, Employment Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 876-79, 110 S.Ct. 1595, 1598-1600,

6

108 L.Ed.2d 876 (1990)). Second, if the law is reasonably related to legitimate penological interest, then the law is valid and does not violate the Free Exercise Clause. See O'Lone, 482 U.S. at 349, 107 S.Ct. at 2405. To determine the reasonableness of the law, the Court should consider the follow factors:

> (1) a regulation must have a logical connection to legitimate governmental interest invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally.

Hines, 148 F.3d at 358 (citing O'Lone, 482 U.S. at 350-53, 107 S.Ct. at 2400.)

Reading the documents which Plaintiff has filed liberally as the Court must, the undersigned finds that the factual allegations as found in and gathered from the record do not indicate that Plaintiff's rights under the First Amendment have been or likely will be violated by the DOC's grooming policy. There is no indication that the grooming policy was applied in an arbitrary manner based upon Plaintiff's religious and secular views.[3] Plaintiff has not demonstrated that he has suffered an actual injury as a result of the Defendants' actions.[4] See Hines, 148 F.3d at 3578-58 (the Court determined the prison's grooming policy was neutral and did not violate the First Amendment even though it had the incidental effect of preventing inmates from wearing their hair in accordance with their respective religions.) Furthermore, it appears that the grooming policy is reasonably related to the legitimate penological interest of maintaining public safety and a secure environment. It is not

---

[3] Policy Directive No. 334.01(5) provides the following concerning male inmates: "Hair length will not exceed the top of the collar or ears, be no more than three (3) inches on top and be kept neat and clean. Hair will have a tapered appearance and may not be blocked."

[4] Plaintiff states that "[t]he growth of his hair is a tribute to the Great Spirit, a sign of respect to his ancestors, it symbolizes his maturity, acquired knowledge and spiritual strength. He also believes that having to keep his hair cut short he will not be able to spend the afterlife with his ancestors in heaven." (Document No. 4, p. 3.)

clear, therefore, that Plaintiff might suffer irreparable harm. Accordingly, the undersigned concludes that the facts as they are evidenced in the documents which Plaintiff has filed do not indicate any violation of Plaintiff's First Amendment right. Injunctive relief is not appropriate.

Next, the undersigned will consider Plaintiff's equal protection claim. The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

Plaintiff states that the DOC's grooming policy discriminates against male inmates because female inmates are "allowed to keep their hair any length they want as long as it is kept neat and

clean." Plaintiff does not suggest that other male inmates are exempt from cutting their hair. Thus, Plaintiff has failed to allege that he was treated differently than any other similarly-situated inmate. Plaintiff further has not shown that he was singled out for harsher treatment. See McClelland v. Sheriff's Deputy, 2001 WL 34826228 (E.D.Va. 2001)(finding that plaintiff's gender discrimination claim should be dismissed because male and female inmates are "differently situated as groups, thus justifying the differing treatment"); Ashann-Ra v. Commonwealth of Virginia, 112 F.Supp.2d 559, 571 (W.D.Va. 2000)(finding no equal protection violation where prison regulations were applied with parity to both male and female inmates because all inmates were required to comply with grooming restrictions and face sanctions for noncompliance); Pariseau v. Wilkinson, 110 F.3d 64 (6th Cir. 1997)(holding that plaintiff's gender discrimination claim was properly rejected because the hair grooming policy was substantially related to the important objectives of security and identification, which were more vital in handling male prisoners.) The undersigned therefore concludes that the facts as alleged by Plaintiff do not indicate any violation of Plaintiff's Fourteenth Amendment rights. Injunctive relief is therefore not appropriate on this basis as well.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court, **GRANT** Plaintiff's Motion to Withdraw and Dismiss Complaint (Document No. 8.), **DENY** Plaintiff's Application to Proceed *in Forma Pauperis* (Document No. 1.) and Motion for Injunctive Relief (Document No. 4.) as moot by virtue of his voluntary dismissal of this action, **DISMISS** Plaintiff's Complaint (Document No. 3.) without prejudice and remove this case from the Court's docket.

Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E.

Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is proceeding *pro se*.

Date: August 18, 2008.

R. Clarke VanDervort
United States Magistrate Judge

10